United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Calling up the case for argument this morning 19-2314 Greatbatch v. AVX Corporation. Mr. Pickey, whenever you're ready. Thank you, Your Honor. Good morning and may it please the Court. I'd like to begin this morning by addressing the claim construction issue. The District Court inserted into the meaning of Claim 12 of the 627 patent words and concepts that are nowhere found in the intrinsic record. This insertion caused the definition of asymmetrical to be divorced from the filtering performance of the capacitor and thus at odds with the understanding of a person of ordinary skill in the arts. As this Court made clear in its decision in the whole logic, asymmetry is a relative term. Therefore, the first step is identifying the reference point. Here, the specification. Can you just clarify? I'm sorry. I'm sorry to interrupt. This is Judge Prowse. Can you just clarify? There's a lot going on in this case and the case went on for a very long time. Judge Stark's first claim construction was quite broad, right? His first construction defined asymmetrical as to be not symmetrical and then he provided two examples. And those two examples used these terms non-ground lead passageway and ground lead passageway. Was there a challenge to that or to something that happened subsequent to that? Our challenge is to that, Your Honor. The issue is that if a different claim construction is adopted other than the one that was provided to the jury in 2016, that being the first construction, the one that provides the two examples of symmetrical, then it becomes an issue of we would seek a remand because we did not have a fair opportunity to argue under a different claim construction. However, if this Court agrees with ABX's position with respect to the proposed construction that we have put forth on appeal, then it is our position, Your Honor, that this Court can decide non-infringement as a matter of law. So going back to that first construction, there's no dispute based on the specification and the intrinsic evidence that the reference point that we're all talking about is the ground pin or the second passageway through which that ground pin passes. After establishing that reference point, the only evidence in the intrinsic record is that a PECIDA would understand that symmetry and asymmetry must be determined based on the relationship between that reference point, the ground pin or the second passageway, and the terminal pin. And it's because the placement relates to the filtering performance of the capacitor. So first, how do we know that it's true? Well, we look to the specification. The specification only discusses symmetry and asymmetry with respect to filtering performance. It recognizes the twin facts that internal grounding increases impedance and that asymmetry makes this impedance worse. Moreover, during the reexamination, Greatbatch, the first named inventor on the 627 patent, Mr. Stevenson, and Greatbatch's expert, Professor Pilgrim, loudly and consistently argued that symmetry and asymmetry must be determined by the relative placement of the ground pin and the terminal pin. It's important to consider these statements in context. Claim 11, the internal grounding claim, had already been deemed obvious. It would be an inter parte review. And Claim 13, disclosing asymmetrical internally grounded filter feedthrough, also had been deemed obvious. It was confirmed by this court to be so. Greatbatch, therefore, was claiming that an asymmetrical internally grounded feedthrough filter capacitor would have not been obvious because a PECIDA would have understood that that capacitor would have had worse performance because asymmetry links the relationship between the ground pin and the terminal pin. Indeed, they reiterated that every electrical engineer window, that inductance and thus impedance, increases when the distance that a signal needs to travel through a conductor, here the ground plate and the ground pin, increases. This principle even has a name, the Biot-Savart principle, and Mr. Stevenson discussed this principle at length in his declaration before the PTO. This is at Appendix 13043. Now Greatbatch, your court... Excuse me a minute. You're talking about the re-examination history right now, right? Yes, Your Honor. Did you make the district court aware of the re-examination history? And did you seek to have him, if you did, did you want him to review his claim construction findings based on the re-exam? We did, Your Honor. So before the 2019 trial, there was a discussion about the meaning of Claim 12 in connection with non-infringing alternatives. And we had actually sought to strike Greatbatch's expert report because we believe that they were using an incorrect claim construction and therefore the topic came up at that time. We specifically asked Judge Stark that if he was going to revisit the meaning of asymmetrical, that he needed to look to have full briefing, which included the re-examination argument. He declined to do so. The re-examination papers were put before him. But you will see that Judge Stark decided that he believed that his claim construction, his first claim construction was broad enough to encompass potential arguments where the definition of asymmetry could be defined and determined by things other than these passageways. So it was, in fact, before him. However, he declined to essentially review that evidence. This is Judge Ranum. During the re-examination, didn't you assert that the passageway layout was the only way to measure symmetry of the capacitor? The passageway, yes, Your Honor. It is AVX position that the only way to measure both symmetry and asymmetry is with respect to the first and second passageways. That has consistently been our position. In fact, this whole issue has come up in part because AVX moved initially for summary judgment that the patent claim 12 was indefinite because the experts and Grayfatch had taken a number of different positions with respect to the meaning of asymmetry. So this case has a lot of oddities with respect to procedure. And so, therefore, there was never really a full standard markman proceeding with respect to asymmetry. It came up in the context of a summary judgment on indefiniteness. Judge Stark declined to find the patent indefinite and at that time rendered this claim construction that included his non-ground-lead and ground-lead passageway example in defining symmetry. The last, a couple other points with respect to symmetry, Your Honor. One is that Grayfatch in its briefing suggests that we need to show a disclaimer in order to rely on the re-examination, file history, and the statements that are put forth by the declarant. But there's no need for a disclaimer here. The undisputed intrinsic record and the only evidence of what a PCTA would understand asymmetrical to mean establishes as a fact that symmetry and asymmetry are to be determined based on the relationship between the first and second passageways. And Grayfatch never in any of its briefings disputes these facts. It simply says, well, it could be other things. The problem with that is that symmetry and asymmetry are mutually exclusive things. You can't have something that's both symmetric and asymmetric at the same time. And we know that in part because Grayfatch tells us so. In its response to the office action, it said it would not be reasonable to have a construction of symmetry and asymmetry that overlap. That's in Appendix 13345. Before your time runs out, let me just get some clarification of something I think you said a few minutes ago. You're saying that if we were to agree with your construction, then there would be no need to remand this? Is there some sort of stipulation that there's no infringement under your construction? Or how are we supposed to litigate that issue in the first instance on appeal? Well, Your Honor, there's sufficient evidence that we put forth in our briefing. And there's also simply just the evidence in the record that is before you as to what these capacitors look like that show that if the only thing that is to be considered is the first and second passageways, then it is very clear that AVX's part meets the definition of symmetry, this mirror image example that Judge Starr crafted. And therefore, it cannot be asymmetrical. And in fact, there's trial testimony from Grayfatch's expert when he was at trial. If this RF pin, which is a separate kind of passageway that's nowhere discussed in the patent or in the record, if the RF pin was not there, would the part be symmetric? And the expert answered yes. So we believe that there is no dispute. There's no factual dispute remaining. And therefore, this court could decide without remanding that there's no infringement. Before I run out of time, Your Honors, I would just like to make a few points with respect to the damages issues that were raised. Primarily, the issue on EG&EO is price erosion. And with respect to price erosion, there was a before price. There was an after price. And that price was the same. And Grayfatch will try to deflect and talk about part numbers. But that before price was the price of a see-through filter that had both filters. I assume that's an argument you made to the jury. It was an argument, Your Honor, that we made to the jury. However, the problem was that the jury heard all kinds of evidence, expert evidence, that was inadmissible and unreliable. And therefore, while we made that. Are you challenging the district court's determinations with respect to that, too? There's a lot of issues in this appeal, but that one I didn't see. Yes, Your Honor. We are, in fact, challenging one of the issues that we are raising. So in order to agree with you on the damages, we would have to find the district court abused his discretion in ruling on your motions to exclude the expert testimony. And then if we agreed that he was wrong about that and he abused his discretion, then we would evaluate your analysis without those. I'm not sure what you expect us to do. We obviously cannot hold another trial here at the appellate court level. Yes, Your Honor. We're not asking you to hold another trial. I think there is a matter of law issue, which is that this court should not allow, when there is an established before price, an established after price, this court should not allow an expert to come in and point to random pieces of evidence to create a price erosion claim where none exists. It leads to an absurd result, which is what we had here. Do you have any cases to support your legal contention here? Well, Your Honor, I think we would point to the Vulcan engineering case. In that case, the court said that it's the patentee's burden to show both price erosion and the amount of price erosion. And clearly, that cannot happen as a matter of law when there's an established before price that is the same as the after price. And so I think the Vulcan engineering case does support our argument. And with that, Your Honor, if I have any rebuttal time, I'd like to reserve it. Thank you. Mr. Muldoon, whenever you're ready. May it please the court. The district court's construction of asymmetry was not limited to the examples. Judge Stark made clear that asymmetry was a measure of the capacitor as a whole. And AVX agreed at the pretrial conference of the Appendix 110 to 111, as well as during the infringement trial at Appendix 2854. Judge Stark's statement in the fall of 2018... I'm sorry to interrupt, sir. It's not your fault, but could you keep your voice a little lower? Yes, ma'am. Thank you. Judge Stark's statement in the fall of 2018 was not a change in the construction because the court had been clear all along that asymmetry was evaluated for the capacitor as a whole. In the December 2015 ruling before the first trial, the court said in ruling on this AVX motion, symmetry, in the court's view, is not necessarily and always evaluated with respect to the first and second passageways. This is all in context of Claim 12 and 627 patent. There is no disclaimer in the patent or any other basis to limit the claim scope in a way that the defendant's motion argues. That asymmetry is measured on the capacitor as a whole and not on any particular one feature in isolation is also what Greatbatch said repeatedly during the reexamination. At Appendix 13344, Greatbatch's response to the first office action said, quote, Claim 12 requires that the capacitor as a whole be asymmetrical and not just a layer of the capacitor be asymmetrical. And the reexamination panel's ultimate construction was that asymmetrical means having two sides or halves that are not the same, not symmetrical. And that construction wasn't limited to pins or passageways. Now, AVX points to arguments Greatbatch made during the reexamination about a figure from the Stevenson 539 patent, a piece of prior art asserted in the reexam. One figure, figure 25 from the 539 patent, is featured at page 27 of AVX's reply brief. However, that plate, that layer, wasn't even asymmetrical. AVX claimed it was asymmetrical because they drew a vertical line through the testing point. If they had just drawn the line horizontally, you'd see that it was actually a symmetrical plate. But in order to respond to those issues, we addressed that point, but concluded at 13367 that merely showing that an electrode plate itself is asymmetrical does not show that the capacitor is asymmetrical as required by Claim 12. This was all consistent with the district court's claim construction that asymmetry is measured of the capacitor as a whole and not any particular feature in isolation. For example, if the claim was that a car was asymmetrical, you wouldn't look solely at the headlights when you know that there is a single steering wheel, a single accelerator, and a brake pedal that are all off center line. Claim 12 does not say that a particular feature of the capacitor is asymmetrically arranged, as AVX argues. It says that the capacitor is asymmetrical. And that indicates, as Judge Stark found, that asymmetry is measured at the overall capacitor and not just pins and passageways. AVX is asking the court to read limitations from the specification into the claim, and Judge Stark over and over rejected that request, and this court should do the same. Judge Stark correctly decided that substantial evidence supported the jury's verdict on the Ingenio price erosion damages. As outlined in the grain processing decision, damages are evaluated by constructing a hypothetical but-for world before the infringement started. Here, however, despite more than a 10-year history of GreatBatch being the sole supplier of feed-through filter assemblies to Boston Scientific, AVX started infringing these patents before there was an established contract price for Ingenio. And therefore, Dr. Strickland, the damage expert, had to determine price erosion from the best available evidence to reconstruct the but-for market. Dr. Strickland's analysis included a comprehensive review of documents and testimony regarding Boston Scientific and GreatBatch's negotiation of the 2011 supply agreement, which established the eroded prices. He spoke to numerous GreatBatch employees about costing, pricing, and reviewed thousands of documents produced by GreatBatch and AVX. He also based his opinions on the testimony of Robert Beckman, GreatBatch's vice president of finance and the finance lead on the contract negotiations, who testified that the Falcon, Ingenio, and other Ingenio quotations and the repeated price confessions given to Boston Scientific during those negotiations resulted in Mr. Beckman's opinion that the Ingenio price was reduced at least $25 because of AVX. As demonstrated by testimony and documentary evidence, Boston Scientific developed AVX as a second source of supply for both the Ingenio and Frontier feed-through filter assemblies in order to force GreatBatch to lower its prices. The VIP Platinum Program poster at Appendix 7018, Boston Scientific identified and qualified AVX as, quote, the second source for manufacturing filtered feed-throughs, creating competition and enabling vertical integration of the unfiltered feed-through. That VIP Platinum Program expressly names Ingenio and Next Generation Pacers, which is the products here at question on the Ingenio price erosion damages. To help develop the infringing AVX Ingenio, Boston Scientific provided AVX Ingenio unfiltered feed-throughs that were manufactured and designed by GreatBatch as part of a top-secret project. During the negotiations, Boston Scientific continually pressured GreatBatch to lower its prices. Based on this evidence and the other evidence cited in GreatBatch's brief, Dr. Strickland defined that GreatBatch could have charged $30 more or about 37% more for Ingenio filtering. And this is consistent with Boston Scientific's statements in the VIP poster that it achieved a 42% price reduction for filtering and that competitive pricing was $50 to $60 for filtering. Further, Dr. Strickland testified, based on comparative quotations and GreatBatch's initial prices for an Ingenio filter, were $29 to $44 higher than those of AVX. As AVX's argument that Boston Scientific accepted GreatBatch's price on an Ingenio feed-through filter assembly, that product did not form a basis of the price erosion and lost profits that was sought in this action. AVX could not have gone ahead and made that entire feed-through filter assembly. It did not have the technology or capability to manufacture the unfiltered feed-through together with the filtering. The price erosion claim was based on the filtering only, which is a separate product with a separate price number listed under the 2011 contract. And AVX's argument that there was no erosion on the $50 price was an issue of fact, clearly resolved against AVX by the jury. After GreatBatch moved for reconsideration in light of HALO, the district court applied the wrong test on AVX's motion for summary judgment of no infringement. Namely, the court held that GreatBatch had to demonstrate egregious infringement. And while egregious infringement is required for enhanced damages, willful infringement only requires subjective willfulness or intentional unknowing infringement. And the court's decision denied GreatBatch of its Seventh Amendment right to a jury verdict on the issues of willfulness. So we've already had three trials with respect to this case, right? Four, Your Honor. Four? Oh, I missed one. But anyway, you're seeking another trial on willfulness, which I guess will have to include everything because it's the underlying conduct with regard to infringement. So you're seeking another trial on that for purposes of trying to get enhanced damages? Yes, Your Honor. Okay. I'll reserve my remaining three minutes for rebuttal. Okay, so my understanding is the only cross-appeal issue you've raised is willfulness, is that right? No, Your Honor. There was the issue of ABX never offered legally sufficient evidence of non-infringing alternatives to the 627 patent, which was the primary reason for the ABX granting a new trial on damages. The jury was a purely paper invention conceived a month before trial, and that was never built, never tested, or accepted. Under green processing and microchemical, as a matter of law, that could not have been available. And therefore, since that was the primary basis for the second trial on damages, we would ask the court reinstate the jury verdict on the damages for the 627 patent. Okay. From the first trial. Mr. Pickey? Yes, Your Honor. A few points. First, with respect to just revisit the claim construction for one moment, because Mr. Muldoon pointed to a passage from the reexamination claiming that Great Batch asserted that it was the asymmetry is to be decided by looking at the capacitor as a whole. And I think that that reading, while it may have been what the words on the page, I don't think it actually captured the argument. In fact, throughout the reexamination, there are places where Great Batch says you cannot, a person of ordinary skill in the art, simply cannot ignore the passageways through which the ground pins and the terminal pins pass. And one of those examples, it's cited on page 27 of our reply brief. It's at appendix 13367. They said, since asymmetry is measured based on the claim ground leads, simply ignoring the passageways when considering asymmetry would not be reasonable. That was the position that they put forth at the PTO. That was the position they said was what a person of ordinary skill in the art would understand. And now today, they're running away from that reexamination history. The second point, Your Honor, is Mr. Muldoon points to a lot of evidence that Dr. Strickland considered. He was their damages expert. But that evidence related to Frontier, related to a different part, didn't relate to Ingenio. And so I asked this court to look carefully at the evidence that was presented. AVX, there was a verdict on price erosion for the Frontier part. And AVX is not appealing that issue. The question for this court is, what is the evidence on price erosion for Ingenio? And the evidence is that the before and after price were the same. All right. Your time has expired, I believe. Did you hear the buzzer? I did, Your Honor. Okay. And you haven't responded to the cross-appeal, as I heard you. Is that correct? We have not, Your Honor. Well, I'm not inviting you to... Yeah. But that goes to the fact that your friend, Mr. Muldoon, will not have anything to respond to as the cross-appellant. I just want to confirm with everyone that I heard it correctly and that you did not touch on to the cross-appeal in your rebuttal, which means that Mr. Muldoon will not have an opportunity to respond because there's nothing to respond to. Mr. Muldoon, do you understand what I'm saying? Am I missing something? No, Your Honor. I believe you're correct. Okay. Thank you. All right. That concludes the proceeding this morning. We thank both counsel and the cases submitted. Thank you.